IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MATTHEW DRAPKIN AND NICOLE )
DRAPKIN SCHAFFER, AS EXECUTORS )
OF THE ESTATE OF DONALD G. )
DRAPKIN, )
)
       Plaintiff, )
)
     v. )      1:19-CV-175
)
ADNAN M. M. MJALLI )
)
       Defendant. )

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge

Plaintiff, the executors of the estate of Donald G. Drapkin ("Drapkin"), brings this diversity action to enforce a one million dollar promissory note ("the Note"), on behalf of the estate. (ECF No. 1.)[1] Before the Court are Plaintiff's Motion for Judgment on the Pleadings or, in the alternative, Motion to Strike Affirmative Defenses, (ECF No. 11), and Defendant's Motion for Leave to Amend Answer and File Counterclaims, (ECF No. 22). For the reasons stated below, Plaintiff's motion will be denied as moot and Defendant's motion will be granted in part and denied in part.

---

[1] The action is brought pursuant to 28 U.S.C. § 1332. (ECF No. 1 ¶ 7.) The late Donald G. Drapkin was a citizen of Colorado, (*id.* ¶ 2), and therefore his estate is likewise a citizen of Colorado, *see* 28 U.S.C. § 1332(c)(2). Defendant is a citizen of North Carolina. (ECF No. 1 ¶ 6.)

1

I. BACKGROUND

Prior to his death in 2016, Drapkin was a successful financier. (ECF No. 1 ¶¶ 2–3.) During the summer of 2008, he wired one million dollars to Defendant, Adnan M. M. Mjalli ("Mjalli"), a friend and collaborator "in the pharmaceuticals space." (*Id.* at ¶ 10; 22-1 at 8.) On September 10, 2008, Defendant executed a promissory note reading in full:

> For VALUE RECEIVED, the undersigned promises to pay Donald G. Drapkin the principal sum of ONE MILLION DOLLARS ($1,000000.00) with interest at the lowest applicable federal rate. The said principal and interest shall be payable in lawful money of the United States of America on September 10, 2018.

(ECF No. 1-4 at 2.) When the Note came due, Plaintiff demanded the million dollars from Defendant, but Defendant refused to pay. (ECF No. 1 ¶¶ 12–13.) Thus, on February 14, 2019, Plaintiff sued Defendant seeking one million dollars plus interest. (*Id.* ¶ 24.) Defendant answered on April 16, 2019, admitting that he had not paid Plaintiff but insisting that he was under no obligation to do so as the "loan" he received was not actually a loan. (*See* ECF No. 8 ¶¶ 11, 13.) Plaintiff now seeks a judgment on the pleadings or, in the alternative, to strike Defendant's affirmative defenses, (ECF No. 11), while Defendant seeks to amend his answer and to add counterclaims against the Plaintiff, (ECF No. 22). The Court will first address Defendant's motion to amend.

II. MOTION TO AMEND

A. Standard of Review

The decision whether to grant or deny a motion to amend a pleading lies within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987). Courts should freely grant leave to amend a pleading "when

2

justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, a request for "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman*, 371 U.S. at 182). An "amendment to add an affirmative defense is futile when 'the proposed affirmative defense is not a defense to liability,' that is, when 'the proposed affirmative defense lacks a sound basis in law.'" *Ross v. Am. Express Co.*, 264 F.R.D. 100, 118 (S.D.N.Y. 2010) (quoting *Greenes v. Vijax Fuel Corp.*, 326 F. Supp. 2d 464, 466, 468 (S.D.N.Y. 2004)).

While an amendment adding a meritless affirmative defense is clearly futile, it is less clear if an amendment adding an otherwise meritorious defense is made futile by the defendant's failure to support its defense with facts sufficient to make the defense "plausible" by the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "Before the Supreme Court decided [*Twombly* and *Iqbal*], it was relatively clear that [affirmative] defenses did not require detailed factual support." *Staton v. N. State Acceptance, LLC*, No. 1:13-CV-277, 2013 WL 3910153, at *2 (M.D.N.C. July 29, 2013). However, "[s]ince those two cases changed the requirements for complaints, a number of courts have imposed similar requirements of particularity on affirmative defenses while others have declined to do so." *Id.* Presently, "[n]either the Supreme Court nor the Fourth Circuit has ruled on whether *Twombly* and *Iqbal* apply to affirmative defenses," *Alston v. AT&T Servs., Inc.*, No. GJH-18-2529, 2019 WL 6684131, at *2 (D. Md. Dec. 5, 2019), and the question remains open in almost every circuit, *see United States v. All Assets Held at Bank Julius*, 229 F. Supp. 3d 62, 70 (D.D.C. 2017). This Court, however, has previously declined to

3

apply *Twombly* and *Iqbal's* heightened plausibility standard to affirmative defenses, holding instead that an affirmative defense is sufficiently plead "as long as the [defense] gives the plaintiff fair notice of the nature of the defense." *Keith Bunch Assocs., LLC v. La-Z-Boy Inc.*, No. 1:14-cv-850, 2015 WL 4158760, at *2 (M.D.N.C. July 9, 2015) (citing *Clem v. Corbeau*, 98 F. App'x 197, 203 (4th Cir. 2004) (per curiam)). The Court will follow its earlier ruling here and decline to apply the heightened plausibility standard to the pleading of affirmative defenses. Thus, Defendant's proposed amendment to add various affirmative defenses will be denied as futile if such defense either (1) fails as a matter of law or (2) fails to provide Plaintiff with fair notice of the nature of the defense.

B. Discussion

Defendant admits that he received one million dollars from Drapkin, signed a promissory note promising to repay the loan with interest, and then refused to pay after the Note matured. (ECF Nos. 1-4 at 2; 22-1 at 3.) Thus, absent an affirmative defense, Defendant may be liable for breach of contract. *See Guessford v. Pa. Nat'l Mut. Cas. Ins. Co.*, 918 F. Supp. 2d 453, 460 (M.D.N.C. 2013) (explaining that in North Carolina, a breach of contract claim requires a valid contract and breach thereof). In his proposed amended answer, Defendant offers five affirmative defenses, some modified from his original answer, some new. (*Compare* ECF No. 8 at 4, *with* ECF No. 22-1 at 5–6.) His proposed affirmative defenses are: (1) that the Note was a gift, not a loan; (2) that if the Note was a loan, it has been "satisfied, released, and/or paid such that no amounts are presently due"; (3) that "Plaintiff's claims are barred by . . . equitable doctrines"; (4) that "Plaintiff's claims are barred by the doctrine of illegality

4

and/or invalidity"; and (5) that Defendant is "entitled to an offset for all value conferred on Plaintiff following execution of the Note."[2] (ECF No. 22-1 at 5–6.)

Plaintiff opposes Defendant's motion to amend, arguing that any amendment would be futile because Defendant's affirmative defenses "are not based on any admissible facts and are legally insufficient." (ECF No. 27 at 1–2.) Thus, the Court must assess the legal and factual sufficiency of Mjalli's five proposed defenses.

1. Defendant's gift defense is not futile

First, Defendant seeks to amend his original answer to argue that the one-million-dollar transfer was "actually [a] gift," and not a loan. (ECF No. 22-1 at 5.) In support of this defense, Defendant alleges that the two men were friends who invested together and that Drapkin gave Mjalli numerous lavish gifts in appreciation of their friendship. (*Id.* at 8.) Mjalli further alleges that on September 10, 2008, he had a conversation with Drapkin in which Drapkin requested that the parties "paper" the million dollar gift by issuing the Note. (*Id.* at 12–13.) Drapkin then allegedly explained that drawing up a note would help him with potential accounting and tax problems triggered by the transfer of funds, that the gift remained a gift, and that "on [his] children's lives . . . th[e] note w[ould] never see the light of day." (*See id.*) Mjalli says he then signed the Note, assured that he had no obligation to ever repay Drapkin. (*Id.* at 13.) These allegations, if true, would be a complete defense to a claim for breach of promissory note as a "gift does not create a legal obligation." *See Garrison v. Garrison*, 322 S.E.2d 824, 826 (N.C. Ct.

---

[2] Defendant's proposed amended answer also adds two counterclaims against Plaintiff. (ECF No. 22-1 at 15–17.) These counterclaims will be addressed separately below.

5

App. 1984) (reversing grant of summary judgment against defendant who claimed a loan she executed a note for was actually a gift).

Plaintiff argues that the Court should not consider this gift defense because it relies "on incompetent parol evidence and discussions between Defendant and [Drapkin] that are barred by [North Carolina's] Dead Man's Rule." (*See* ECF No. 27 at 5.) However, as discussed below, neither North Carolina's parol evidence rule nor its dead man's rule bar Defendant's gift defense.

  i. *North Carolina's parol evidence rule does not apply*

"The parol evidence rule prohibits the admission of parol evidence to vary, add to, or contradict a written instrument intended to be the final integration of the transaction." *Lassiter v. Bank of N.C.*, 551 S.E.2d 920, 923 (N.C. Ct. App. 2001). The rule "presupposes the existence of a legally effective written instrument," and so "does not in any way preclude a showing of facts which would render the writing inoperative or unenforceable." *See Lawyers Title Ins. Co. v. Golf Links Dev. Corp.*, 87 F. Supp. 2d 505, 511–12 (W.D.N.C. 1999)*; see also* 11 *Williston on Contracts* § 33:2 (4th ed.) (explaining that the parol evidence rule "applies only when there is a binding, written contract"); 6 *Corbin on Contracts* § 25.21 (explaining that the rule "does not bar the admission of parol evidence to prove that the writing, which purports to be a contract, is not a contract at all"). In *Garrison v. Garrison*, the North Carolina Court of Appeals held that the parol evidence rule does not bar the introduction of parol evidence showing that an apparent loan purportedly backed by a note was, in fact, a gift. 322 S.E.2d at 826. Because a gift lacks consideration and therefore creates no obligation, evidence showing that a purported note was really a gift would not vary, add to, or contradict a finalized contract; it would show

that no contract ever existed. *See id.* In *Garrison*, the defendant claimed that the note at issue was a "sham" that was "given for plaintiff's tax purposes with no intention that it be repaid." *Id.* In this case, Defendant claims that Drapkin asked him to sign the note for accounting and tax purposes, swearing that the note would "never see the light of day." (*See* ECF No. 22-1 at 12–13.) Thus, here, just as in *Garrison*, the parol evidence rule does not block Mjalli's efforts to show that a "loan" was really a gift.

Plaintiff disagrees, citing the North Carolina Supreme Court's decisions in *Industrial Loan & Investment Bank v. Dardine*, 177 S.E. 635 (N.C. 1935), and *Bank of Varina v. Slaughter*, 108 S.E.2d 594 (N.C. 1959). (*See* ECF No. 27 at 6 (arguing that "North Carolina courts have long rejected the very allegations Defendant makes in his Proposed Amendment—that when Defendant signed the Note, Mr. Drapkin had no expectation Defendant would repay the Note").) However, both cases were distinguished in *Garrison* as involving "indebtedness incurred for consideration." *See Garrison*, 322 S.E.2d at 826. In contrast, in both *Garrison* and the case currently before the Court, the note at issue does not appear to have been supported by any consideration other than the money transferred from the ostensible creditor to the debtor. *See id.*; (ECF Nos. 8; 22-1). While the court in *Garrison* held that the presence of additional consideration in *Dardine* and *Bank of Varina* sufficed to distinguish those cases from *Garrison*, these cases are distinguishable on another ground: the defendants in *Dardine* and *Bank of Varina* appeared to have paid back some of the money they owed before attempting to frame their loans as gifts. *See Dardine*, 177 S.E. (explaining in case synopsis preceding opinion that defendant had paid back $498 of what she owed); *Bank of Varina*, 108 S.E.2d (explaining in case synopsis preceding opinion that defendants had made two payments on their note).

7

This repayment strongly suggests that the so-called gifts were truly loans. Here, however, Mjalli has not paid back any of the money he allegedly owes. Thus, as in *Garrison*, the parol evidence rule does not prevent Defendant from arguing that the Note was a sham.

     ii.  *North Carolina's dead man's rule does not apply*

Plaintiff also argues that Defendant's proposed gift defense is barred by application of North Carolina's dead man's rule. (*See* ECF No. 24 at 8–10.) The rule states that "a party . . . shall not be examined as a witness in his . . . own behalf or interest . . . against the executor . . . of a deceased person . . . concerning any oral communication between the witness and the deceased." N.C. Gen. Stat. § 8C-1, Rule 601(c).[3] This rule establishes the competency of witnesses to testify "[u]pon the *trial* of an action, or the hearing upon the merits of a special proceeding." *Id.* (emphasis added). Thus, the dead man's rule "does not bar the inclusion of such allegations in a pleading before discovery has even been conducted." *Foreman v. Camfil Farr, Inc.*, No. 3:10CV664-RJC-DSC, 2011 WL 4747926, at *2 (W.D.N.C. June 9, 2011) (granting defendant's motion to amend answer despite plaintiff's argument that North Carolina's dead man's rule rendered the proposed amendment futile). While North Carolina's dead man's rule may prevent Defendant from testifying as to this matter at trial, it does not prevent the inclusion of such allegations at the pleading stage. *See id.*

As explained above, if the million dollars Drapkin gave Mjalli was a gift and not a loan, Defendant would have no obligation to repay the funds. Having concluded that neither the

---

[3] Federal courts sitting in diversity apply state dead man's statutes where, as here, state law "supplies the rule of decision." *See* Fed. R. Evid. 601; *Maltas v. Maltas*, 197 F. Supp. 2d 409, 423 (D. Md. 2002) *rev'd on other grounds*, 65 F. App'x 917 (4th Cir. 2003); *Paul v. Gomez*, 118 F. Supp. 2d 694, 695 (W.D. Va. 2000); *Amell v. Kucewicz*, 53 F. Supp. 2d 145, 146 (D. Mass. 1999).

parol evidence rule nor North Carolina's dead man's rule prevents Defendant from asserting this defense, the Court cannot conclude that allowing Mjalli to amend his answer to include his first affirmative defense would be futile. Further, as most of Defendant's proposed additions to his answer are in service of this defense, the Court will hereby allow in all of Defendant's proposed amended answer except as explicitly restricted below.

2. <u>Defendant's satisfaction, release, and payment of loan defenses are futile</u>

While Defendant's primary defense is that he was under no obligation to repay Drapkin, his second defense, argued in the alternative, is that if the million dollars was a loan, the loan has "been satisfied, released, and/or paid such that no amounts are presently due." (ECF No. 22-1 at 5.) Defendant claims he has "satisfied all amounts due and owed" to Plaintiff by providing valuable services to Drapkin ranging from the fairly concrete—securing an investment from Pfizer in a company Drapkin co-owned—to the abstract—providing "personal and professional support." (*See* ECF Nos. 22-1 at 10 (describing Pfizer's investment); 30 at 7–8 (enumerating sources of satisfaction).) The terms of the Note, however, called for repayment in a specific form: "lawful money of the United States of America." (ECF No. 1-4 at 2.) Thus, Defendant's actions, no matter how kind or valuable to Drapkin, are not a defense to non-payment of the Note in lawful money *unless* the parties subsequently agreed to permit Defendant to repay Drapkin in another form. This is the defense of accord and satisfaction.

"In North Carolina, the doctrine of accord and satisfaction is an affirmative defense to a breach of contract claim." *Jones v. Nationwide Advantage Mortg. Co.*, No. 1:17CV189, 2018 WL 1569835, at *3 (M.D.N.C. Mar. 27, 2018). The defense has two elements: "(1) the accord, [an]

9

agreement by one party to give or perform and by the other party to accept in satisfaction of a claim, something other than or different from what he is or considers himself entitled to; and (2) a satisfaction, which is the execution or performance of the agreement." *Id.* (internal citations omitted); *see also Moore v. Frazier*, 305 S.E.2d 562, 563–64 (N.C. Ct. App. 1983). Thus, "for a defendant to successfully defend on the basis of accord and satisfaction, 'there must have been a negotiation or agreement between the parties concerning payment or acceptance of less than the full amount owed.'" *G.E.B., Inc. v. QVC, Inc.*, 129 F. Supp. 2d 856, 862 (M.D.N.C. 2000) (quoting *Bromhal v. Stott*, 447 S.E.2d 481, 484 (N.C. Ct. App. 1994)).

Here, Defendant has failed to plead that he reached an agreement with Drapkin by which the parties exchanged payment of one million dollars in lawful money for payment through a medley of other services. Absent this sort of agreement, Defendant's satisfaction defense, (ECF No. 22-1 at 5), fails as a matter of law. Consequently, allowing such amendment would be futile.

    3.    <u>Defendant's equitable doctrine defenses are futile in part</u>

Next, Defendant seeks to amend his answer by elaborating on his third affirmative defense, arguing that Plaintiff's claims are barred by "equitable doctrines." (ECF No. 22-1 at 6.) Specifically, Defendant argues that Plaintiff's claims are barred by the doctrines of:

> waiver, estoppel, laches and/or unclean hands, including but not limited to, due to the passage of time, the parties' tax and financial treatment, discussions prior to execution—in the presence of others, financial handling and treatment of the alleged "Note" for more than ten years, and Plaintiff's conduct, including inaction.

10

*Id.* Plaintiff replies that Defendant's (1) waiver, (2) estoppel, (3) laches, and (4) unclean hands defenses fail as a matter of law. (*See* ECF No. 27 at 9–10.) Thus, the Court must examine the sufficiency of each equitable defense as plead by Mjalli.

"Waiver is an affirmative defense to a breach of contract claim." *Lonesource, Inc. v. United Stationers Supply Co.*, No. 5:11-CV-33-D, 2013 WL 1309290, at *7 (E.D.N.C. Mar. 28, 2013). "It is well settled in North Carolina that a 'party may waive a contract[ual] right by any intentional and voluntary relinquishment.'" *Demeritt v. Springsteed*, 693 S.E.2d 719, 721 (N.C. Ct. App. 2010) (quoting *McNally v. Allstate Ins. Co.*, 544 S.E.2d 807, 809) (N.C. Ct. App. 2001)). "The essential elements of waiver are the existence at the time of the alleged waiver of a right, advantage or benefit, the knowledge of the existence of that right, advantage or benefit, and an intention to relinquish such right, advantage or benefit." *Hughes v. Unumprovident Corp.*, No. 1:04CV00632, 2006 WL 51170, at *6 (M.D.N.C. Jan. 10, 2006) (citing *J.W. Cross Indus., Inc. v. Warner Hardware Co., Inc.*, 379 S.E.2d 649, 650 (N.C. Ct. App. 1989)). "The intention to waive may be expressed or implied from acts or conduct that naturally lead the other party to believe that the right has been intentionally given up." *Demeritt*, 693 S.E.2d at 721 (quoting *Klein v. Avemco Ins. Co.*, 220 S.E.2d 595, 599 (N.C. 1975)).

Here, Plaintiff argues that Defendant's waiver defense fails because "Defendant alleges no agreement by Plaintiff to waive Defendant's repayment obligations." (ECF No. 27 at 9.) The Court disagrees. Mjalli has alleged that a waiver occurred and has further supplied the facts by which the Court could conclude that Drapkin implicitly waived his right to repayment, including, for example, Drapkin's "tax and financial treatment of the alleged 'Note' for more than ten years." (*See* ECF No. 22-1 at 6.) While this defense may be factually insufficient under

11

the *Twombly* and *Iqbal* standard, it provides Plaintiff with "fair notice of the nature of [Defendant's] defense." *See Keith Bunch Assocs.*, 2015 WL 4158760, at *2. Accordingly, Defendant's waiver defense is neither legally nor factually insufficient.

Defendant's next proposed equitable defense, equitable estoppel, however, is too bare bones to be factually sufficient. "The essential elements of equitable estoppel are: (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts." *Bankaitis v. Allstate Ins. Co.*, 229 F. Supp. 3d 381, 386–87 (M.D.N.C. 2017) (internal quotations omitted) (quoting *Trillium Ridge Condo. Ass'n, Inc. v. Trillium Links & Vill., LLC*, 764 S.E.2d 203, 216 (N.C. Ct. App. 2014)). Here, Mjalli's briefing reveals that he intends to argue that Plaintiff is equitably estopped from bringing a breach of contract claim because Drapkin (1) falsely represented the loan as a gift; (2) with the intention that Mjalli would rely on that false representation; and (3) with knowledge that the representation was false. (*See* ECF No. 30 at 9–10.) This is not clear, however, from the face of Defendant's proposed amended answer which does not specifically allege any of the three elements of equitable estoppel and therefore does not provide Plaintiff with fair notice of the grounds on which Defendant asserts the defense. Accordingly, allowing Defendant's amendment to include an estoppel defense would be futile.

Next, Defendant's third equitable defense—the doctrine of laches—fails as a matter of law. "Laches is an affirmative defense to a suit at equity" that permits a defendant to argue that the plaintiff is estopped from enforcing their legal rights due to plaintiff's unreasonable and prejudicial delay in attempting to enforce those rights. *See Thomas v. Freeway Foods, Inc.*, 406

F. Supp. 2d 610, 621 (M.D.N.C. 2005). Here, Defendant admits that Plaintiff "has demanded money from Defendant" since the day the Note matured. (*See* ECF No. 22-1 at 3.) Thus, there was no delay of any kind here and allowing Defendant's proposed amendment to add the defense of laches would be futile.

Defendant's final equitable defense—unclean hands—also fails as a matter of law. "Under North Carolina law, the 'defense of unclean hands is [applicable only] when the plaintiff seeks an equitable remedy.'" *Guessford*, 918 F. Supp. 2d at 469 (quoting *Food Lion v. Capital Cities/ABC*, 951 F. Supp. 1233, 1234 (M.D.N.C. 1996)). Claims for monetary relief, therefore, are "not properly addressed through the affirmative defense of unclean hands." *See id.* Here, Plaintiff seeks only an award of one million dollars plus interest. (ECF No. 1 at 5.) Thus, allowing Defendant's motion to add an unclean hands defense would be futile and must be denied.

4. Defendant's illegality / invalidity defense is futile

Next, Defendant seeks to amend his original answer by adding his fourth affirmative defense, arguing that the Note at issue was illegal or invalid. (ECF No. 22-1 at 6.) Specifically, Defendant argues that:

> Plaintiff's claims are barred by the doctrine of illegality and/or invalidity as the alleged "loan" does not validly reflect the nature of the transaction at issue and/or an alleged indebtedness in that it is indefinite as to interest rate calculation and accrual, lacks security, and lacks other material provisions typically found in such a "Note."

*Id.* The Court finds this argument difficult to follow. To the extent that Defendant argues the Note itself is illegal, his argument fails. To be sure, "North Carolina courts will not enforce an illegal contract." *Feldstein v. Nash Cmty. Health Servs., Inc.*, 51 F. Supp. 2d 673, 680 (E.D.N.C.

13

1999) (citing *Lamm v. Crumpler*, 88 S.E.2d 83 (N.C. 1955)). The doctrine of illegality, however, applies when the contract itself requires illegal action. *See Botts v. Tibbens*, 754 S.E.2d 708, 712 (N.C. Ct. App. 2014) (holding that a contract was not illegal where it did not "require performance by someone precluded by statute from performing"); *Carolina Water Serv. v. Town of Pine Knoll Shores*, 551 S.E.2d 558, 560 (N.C. Ct. App. 2001) (explaining that an "agreement which cannot be performed without violation of a statute is illegal and void"). Here, Defendant would have violated no law had he repaid Drapkin, so his illegality defense fails as a matter of law.

Likewise, if Defendant seeks to void the contract for violating public policy, his argument fails because "[p]ublic policy requires the enforcement of contracts deliberately made which do not clearly contravene some positive law or rule of public morals." *See Majestic Cinema Holdings, LLC v. High Point Cinema, LLC*, 662 S.E.2d 20, 23 (N.C. Ct. App. 2008) (quoting *Calhoun v. WHA Med. Clinic, PLLC*, 632 S.E.2d 563, 573 (N.C. Ct. App. 2006)); *see also St. Paul Mercury Ins. Co. v. Duke Univ.*, 849 F.2d 133, 134 (4th Cir. 1988) ("The power to refuse to enforce contracts on the ground of public policy is . . . limited to occasions where the contract would violate some explicit public policy that is well defined and dominant." (internal quotations omitted)). Here, Defendant has identified no law, policy, or moral that would be violated by enforcement of the contract if the contract is legitimate.

Finally, to the extent Defendant argues the contract is unenforceable because it is too indefinite, his proposed defense fails as a matter of law. Defendant criticizes the Note as "indefinite as to interest rate calculation and accrual, lack[ing] security, and lack[ing] other material provisions typically found in such a 'Note.'" (ECF No. 22-1 at 6.) Defendant is

correct that "[t]o be enforceable, the terms of a contract must be sufficiently definite and certain." *Cole v. Champion Enters., Inc.*, 496 F. Supp. 2d 613, 621 (M.D.N.C. 2007). A term in a contract is sufficiently definite if a court can ascertain the intent of the parties and enforce it. *See Micro Capital Inv'rs, Inc. v. Broyhill Furniture Indus.*, 728 S.E.2d 376, 381 (N.C. Ct. App. 2012) ("[A] contract will not be held unenforceable because of uncertainty if the intent of the parties can be determined from the language used, construed with reference to the circumstances surrounding the making of the contract, and its terms reduced to a reasonable certainty.") (quoting *Brawley v. Brawley*, 361 S.E.2d 759, 762 (N.C. Ct. App. 1987)); *Reserves Mgmt., LLC v. Am. Acquisition Prop. I, LLC*, No. 673, 2012, 2014 WL 823407, at *8 (Del. Feb. 28, 2014) ("The material terms of a contract are vague or indefinite if they cannot provide a reasonable standard for determining when a breach has occurred.") (citation omitted). Here, the terms of the Note provide for repayment of the principal plus interest at "the lowest applicable federal rate" on a set date. (ECF No. 1-4 at 2.) These terms are not nearly so indefinite as to make the intent of the parties inscrutable or to deprive the Court of a reasonable standard for determining if a breach has occurred. Thus, Defendant's proposed affirmative defense of illegality or invalidity—no matter how it is construed—is not a proper defense to liability.[4] The Court therefore denies Defendant's motion to add these defenses, (ECF No. 22-1 at 6).

---

[4] To the extent that Defendant argues that the Note is too indefinite to enforce because it lacks security and other material provisions typically found in a note, (*see* ECF No. 22-1 at 6), these arguments also fail. First, Defendant appears to take issue with Drapkin's decision not to request "any collateral or other security for repayment" of the loan. (*Id.* at 14.) Defendant provides no authority suggesting that this lack of security makes the Note unenforceable. Second, Defendant seems to argue that the Note is unenforceable because it "does not remotely resemble a traditional promissory note for such

15

5. Defendant's setoff defense is futile

Finally, Mjalli seeks to amend his answer to add a fifth affirmative defense for an offset or setoff of any debt he may owe Plaintiff. (*Id.*) According to Defendant, to "the extent Defendant is obligated to pay any amounts to Plaintiff, Defendant is entitled to an offset for all value conferred on Plaintiff following execution of the Note." (*Id.*) Defendant alleges that he provided various forms of assistance to Drapkin, such as friendship when Drapkin was going through a rough patch in his business life. (*See id.* at 11.) Defendant does not, however, allege that Drapkin owed him anything following the execution of the Note. This is fatal to Defendant's offset defense because the "right of set-off arises and can be enforced only where there are mutual debts between the parties." *Coburn v. Carstarphen*, 139 S.E. 596, 597 (N.C. 1927); *see also Durham v. SMI Indus. Corp.*, 882 F.2d 881, 883 (4th Cir. 1989) ("North Carolina has long recognized the right of setoff where mutual debts exist between parties."); *Spiliotis v. Spirakis*, No. 7:16-CV-246-BO, 2017 WL 465286, at *2 (E.D.N.C. Feb. 1, 2017); ("Under North Carolina law . . . a right to setoff exists where there is a mutual debt between the parties."). Thus, this defense, (ECF No. 22-1 at 6), lacks a sound basis in law and is therefore futile.

In sum, Defendant's proposed amended pleading alleging five affirmative defenses will be permitted with the exceptions that Defendant may not add the affirmative defenses of satisfaction, equitable estoppel, laches, unclean hands, illegality, invalidity, or setoff. If there are facts Defendant failed to plead that can support a defense of satisfaction, equitable

---

a sizable sum." (*Id.*) This lack of formality does not render an otherwise valid contract invalid, and Defendant provides no authority to the contrary.

16

estoppel, or setoff, he may seek leave of the Court to refile an amended pleading properly stating these defenses. *See Staton*, 2013 WL 3910153, at *3 (striking an accord and satisfaction defense where defendant failed to plead facts explaining why the defense was applicable but permitting defendant to refile if it could provide the facts necessary to support the defense). However, based on the pleadings already before the Court, including Defendant's proposed amended answer, Defendant's laches, unclean hands, illegality, and invalidity defenses fail and cannot be rescued by pleading additional facts. Defendant's request to amend his answer to add these defenses is therefore denied with prejudice.

### III. MOTION TO FILE COUNTERCLAIMS

In addition to seeking leave to amend his Answer, Mjalli also seeks to add two counterclaims against Plaintiff. (ECF No. 22-1 at 15–17.) These prospective claims, both brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, seek declarations that (1) "Mjalli is not indebted to Plaintiff for the amount complained for . . . or any other amount" and (2) that, in the alternative, if the Court finds Defendant did receive a loan from Drapkin, the debt "has been fully and completely satisfied." (*Id.* at 16.)

The Declaratory Judgment Act provides that in "a case of actual controversy within its jurisdiction," a district court "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). The decision to hear or dismiss a declaratory action is committed to the sound discretion of the district court. *Centennial Life Ins. Co., v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996). However, to decline to exercise its declaratory judgment jurisdiction, a district court "must have good reason." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 594 (4th Cir. 2004) (quoting

17

*Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994)). "Where a counterclaim mirrors an affirmative defense, courts have dismissed the counterclaims." *XL Specialty Ins. Co. v. Truland*, No. 1:14cv1058(JCC/JFA), 2015 WL 925595, at *2 (E.D. Va. Mar. 3, 2015); *see also Biltmore Co. v. NU U, Inc.*, No. 1:15-cv-00288-MR, 2016 WL 7494474, at *2 (W.D.N.C. Dec. 30, 2016). Counterclaims mirror an affirmative defense, that is, they are duplicative or redundant of the affirmative defenses, when there is no "disparity of remedies" or difference of substance between the two. *See Biltmore*, 2016 WL 7494474, at *3. "If there is any doubt about a counterclaim's redundancy, courts should exercise an abundance of caution by retaining the counterclaim," especially "at the pre-trial stage, as the redundancy of a claim can be difficult to ascertain without a trial." *Scottsdale Ins. Co. v. B & G Fitness Ctr., Inc.*, No. 4:14-CV-187-F., 2015 WL 4641530, at *2 (E.D.N.C. Aug. 4, 2015). Accordingly, courts in this district and elsewhere in the circuit have exercised due caution by declining to dismiss even those counterclaims that may be redundant. *See Superior Performers, Inc. v. Ewing*, No. 1:14CV232, 2015 WL 3823907, at *3 (M.D.N.C. June 19, 2015); *Scottsdale*, 2015 WL 4641530, at *2.

Here, Defendant's proposed counterclaims may well prove to be duplicative of his affirmative defenses. However, as this litigation is still in its infancy, the Court will exercise an abundance of caution and permit Defendant to add his first counterclaim seeking a declaration that Mjalli is not indebted to Plaintiff for any amount. (ECF No. 22-1 at 15–16). However, the Court will decline to exercise its discretion to hear Defendant's second counterclaim, (*id.* at 16–17), because, for the reasons stated above, Defendant's satisfaction defense—which his second counterclaim essentially restates—is futile in its current form. If

Defendant can allege facts making out a proper satisfaction defense, he may seek leave of the Court to refile this counterclaim.

## IV.  PLAINITFF'S MOTIONS

Finally, the Court must address Plaintiff's Motion for Judgment on the Pleadings made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and alternative Motion to Strike Defendant's affirmative defenses made pursuant to Rule 12(f).  (ECF No. 11.)  Plaintiff's motion for judgment on the pleadings is hereby denied as moot as the Court has permitted Defendant to amend his answer.  Likewise, Plaintiff's motion to strike the three affirmative defenses Defendant put forth in his original pleading is denied as moot.

The Court therefore enters the following:

**[ORDER TO FOLLOW]**

**ORDER**

IT IS THEREFORE ORDERED that Defendant's Motion for Leave to Amend Answer, (ECF No. 22), is GRANTED in part and DENIED in part. Defendant's motion is GRANTED to the extent that he seeks to amend his answer as set forth in ECF No. 22-1 with the exceptions that Defendant may not add the affirmative defenses of satisfaction, equitable estoppel, laches, unclean hands, illegality, invalidity, or setoff. Defendant's motion is DENIED to the extent that he seeks to add the above-referenced affirmative defenses. Furthermore, Defendant's motion to add the defenses of laches, unclean hands, illegality, and invalidity is DENIED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant's motion to file counterclaims as set forth in ECF No. 22-1 is GRANTED in part and DENIED in part. It is GRANTED as to his first counterclaim and DENIED as to his second counterclaim.

IT IS FURTHER ORDERED that Defendant shall within five days of this Order file an updated amended answer with the Court complying with this Order.

IT IS FURTHER ORDERED that Plaintiff's Motion for Judgment on the Pleadings and alternative Motion to Strike Affirmative Defenses, (ECF No. 11), is DENIED as moot.

This, the 20th day of February 2020.

/s/Loretta C. Biggs
United States District Judge